Good morning everyone. The first order of business will recognize Judge Hardiman for purposes of admission of one of his clerks. Thank You Judge Fischer. I'm going to ask Joseph Valenti to come to the podium please. It's a privilege for me, Judges Fischer and Stapleton, to move the admission of this young lawyer, Joseph Anthony Valenti. He's a 2005 graduate of Duquesne University and a 2009 graduate of its law school. I've had the privilege of working with Joseph since September of this year, and I can personally attest to his moral character and fitness to practice. He is a member of good standing, in good standing, of the Bar of the Commonwealth of Pennsylvania, and I have every hope and expectation that Joe is about to embark as he enters private practice next month on what will be a very rich, rewarding and successful law practice. Most importantly, that he'll be a credit to the members of the Bar of this court and the Bar of Pennsylvania. With that, I move his admission. Is there a second? Seconded by Judge Stapleton, and without objection that request will be Will you swear in, Mr. Valenti? I do. Mr. Valenti, we wish you well. We wish you all the best and understand you're going to be practicing in the Pittsburgh area, and we look forward to your appearance before this court in the relatively near future. Thank you, Your Honor. Congratulations. Congratulations. Thank you. Best wishes. Okay. With that, we'll call the first case, United States v. Maria Leonidas. Mr. Goldberger. Good morning, Your Honors, and may it please the Court. My name is Peter Goldberger. It's my privilege this morning to represent Maria Leonidas, who was the defendant below and is the appellant here, and I would like to reserve two minutes of my time for rebuttal. Thank you, sir. Although the district court imposed a discretionary sentence in this case somewhat below the guideline range, the sentence was clearly computed not just by looking at the guidelines, but measured from the guidelines, and so our issue today is one about whether the guidelines were correctly calculated. The guideline determination for private sector – excuse me, public sector bribery, 2C1.1, as applied here, incorporated a six-level error in determining the value of the benefit, which resulted in a virtual doubling of Mrs. Leonidas' sentence. Since their company that was owned principally by Mr. Leonidas, but also by her, fully performed its contract with the FAA and performed it well according to specifications, the value of the benefit should have been determined and calculated on the net profit to the company that performed the contract, DMS. Instead, the district court looked at the benefit in a different sense to the defendant and her family and used a figure which was the combined and cumulative salaries of the  This is not the method which is suggested by the guideline and its commentary. So the outcome turns on what is really a fairly narrow question of law. The guidelines are a set of rules. The guideline establishes the rule that applies here. The district court did not apply that rule. It's not a question of what the district judge might think is more fair. It's not a question of how the judge feels about a contract that's won by bribery. Those decisions are made by the Sentencing Commission. And if, as a matter of policy, the district judge should disagree with them, then we have post-Booker, post-Gaul, other ways of calculating the sentence. But you have to calculate the guideline sentence correctly. The work, and it's undisputed, that in this family company, family-owned company, Mr. and Mrs. Leonidas, particularly Mrs. Leonidas, were not mere investors. They were workers. They were computer engineers. They designed these programs, very sophisticated programs that control how airplanes are managed on the tarmac in airports. They did a lot of the work, the professional work. They did the travel to oversee the implementation of that work around the country. They're entitled and were entitled to be paid for that work, just as if they had been outside investors and in the amount that, had they been outside investors, they would have paid some other computer engineer to do the work. And to treat, instead, their salary as if it were the same as profit is just to misunderstand accounting of small corporations. That's just not. Now, Mr. Goldberger. Sure. The district court added the 16-point enhancement. Yes. Really based on two alternative theories, did it not? Not as I read the record, but I understand what you're saying. First of all, wasn't there a, the amount, do you argue the Landers case? The Landers case is one of the cases from another circuit in a similar situation, the Seventh Circuit case, I believe. Okay. How do you say that the district court calculated the 16-point enhancement? The record shows that the court adopted the pre-sentence report analysis. The court discussed with counsel a number of ways that the judge thought it could be looked at. Right. But in the end, the ruling was, and I understand that to be your question, that if the benefit to the, the benefit, and the judge viewed this as benefit to the defendant, but that's not what the guideline says, is greater than the amount of the bribe, then you use the benefit to the defendant, and that the benefit to the defendant should be measured as the cumulative salaries paid to her and her husband for work done under this contract, an amount somewhat just over $1 million. Okay. Over the four years. That was the ruling, and the judge, the judgment statement of reasons. But why is that not a correct rule? Because it's contrary to the rule established by the guidelines. The guideline says that the net, as interpreted by this court, the two cases in this court that address it are, and I would start, I think, with Cohen, where the government argued the opposite position from the one they're arguing here. And the court said the government was right. That is, the government argued in Cohen the position I'm taking here, because that's the law of the circuit. That is, that where an individual pays a bribe to obtain work for the individual's employer, a company, a corporation, that the benefit, the net benefit, profit, in the case of a company and a contract that's fully performed, is the benefit, that is to say the net profit, to the company, not the amount put in the pocket along the way of the individual who paid the bribe. The judge instead did the opposite. Doesn't the guideline require us to determine what the net benefit is? Yes. Our question is what does net benefit mean and net benefit to whom? Exactly. All right. Now, you argue that they shouldn't use the salary as a proxy. Sure. If your position is a correct one, wouldn't that, in effect, say that you could pay a bribe to get a salary? Did you say if the sole motive of the bribe were to maintain the briber's employment?  You could pay a bribe to get a salary. If you couldn't count the salary as the benefit or the proxy for the benefit. Well, it certainly wouldn't say you could pay the bribe. It would be a crime to pay the bribe. The question is how you measure the appropriate punishment for that. The appropriate punishment is defined in the guideline. All right. If the contract then is fully performed, if the person, if the beneficiary, the other contracting party, here the United States government, receives full value of a fairly valued contract, I don't want to say fairly awarded contract because, of course, the presumption is it's affected by the bribe, how do you measure the net amount to measure the seriousness of the crime? And the guideline says the person doesn't go free and the person doesn't get a free pass on the sentence. The guideline says you start with and ought to use the amount of the bribe as the amount unless the net benefit to the beneficiary, according to Cohen, the company, is greater. So we're not talking about zero versus some amount. We're talking about $150,000, the amount of the bribe, $155,000, or the profit. In this case, the profit was shown by undisputed evidence to be less or benefit in a sense that the guidelines don't talk about the personal salary, which was more. Isn't it true, though, in a closely held corporation such as this one, the principals have a lot of control over what salary to pay themselves? Yes. My recollection of Cohen was that the benefits were dispersed throughout the corporation. Isn't that an important factual distinction? I would say it is, and it's a fact to be addressed at the district court. If the government had the position that the salaries were a disguised way of paying profit, were in excess of the true market value of these professional services, absolutely ought to show that. We presented, the defense presented the report of an accountant. The amounts of salaries were stated, and I think even the pre-sentence report, I forget now if it was a pre-sentence report or if it was something that was said at the sentencing hearing, to be appropriate and fair. If they were not appropriate and fair, if they were inflated to eat up some profit, as in the hypothetical you're giving by all means, that should be knocked down because it's not just whatever they choose to pay themselves. So you're saying that's a valid issue, but the government didn't carry its burden on that? Sure. They didn't even raise it. What about the other? If you look at the amounts, it bears out what I'm saying. They were paid each year $65,000, $80,000. This is not an unreasonable amount to be paying a professional computer engineer for the work that they were doing. I thought the district court also analyzed the gross revenues of some $6.7 million, and then there was a deduction for labor costs. And your expert, I thought, clearly connected the subcontractor costs of some $2.1 million to the illegally procured contracts. But I didn't see in the record where all of the other costs were tied to those contracts. And it seemed to me that you would need to show that to get below the $1 million threshold, which is so important for the guidelines purposes. Yes. The defense accounting report that was submitted stated, and was undisputed by the government in stating and showing, that all of the costs were variable, that they were listed on that report. These were not the books and records of the company that were presented. They were an accountant report where the instructions to the accountant were determine the variable direct costs of performing this contract, this contract. So, yes, that whole, and we've tried to summarize them and make them easier to read in the addendum to the brief, out of the defense expert accounting report. You can't have one side present an expert report, have the other side not dispute it, and then come in and argue maybe it wasn't right, maybe it isn't fair, maybe these are allocated. The government has a factual burden in the trial. They had to prove the value. And instead, the U.S. attorney got up and said, we have no dispute here about the facts. Well, that, you've honed right in on my concern, which is, is it their burden or your burden? Once they come forward with evidence to show what the gross revenues are, isn't it your burden to show that these costs are direct, as opposed to the indirect costs? That argument wasn't made below, but the burden is on the government. I mean, at least the Court's cases without refinement of that kind say that the burden to show value is on the government. And there is no, you do all the pluses, we do all the negatives. But even so, we submitted the evidence and they didn't. An accountant, a qualified expert, we presented in a report in which he said, these are variable direct costs of this contract. If the government wanted to say, no, that isn't true, you're playing games with the numbers, they would have to show that it isn't so. Mr. Goldberger, I thought you said to me that, when I asked about the two alternate theories, that the government, or that the district court didn't do a Landers-type analysis. No, I didn't. I said the government, the court did do that analysis in discussion, but that wasn't the basis of the ruling. If I didn't make that clear, I apologize. The ruling was made on a single basis. I didn't see, and I don't believe, and I could be mistaken if you show me otherwise, that there was an alternate holding. I didn't see that. And what my reading of the record, I think, is borne out by the official statement of reasons attached to the judgment, where the judge says that he adopts the pre-sentence report and the salaries are the benefits method is what the pre-sentence report says. Well, he did not find a net profit figure, did he? That's right. He said that's the wrong method. He said you don't get to count your profit when, or not, when you win a contract by bribery. That's dishonest. We're not interested in that because you won this contract by bribery. That's just not what the guidelines say, not what the case law says. If the contract is won by bribery and the person performs the contract, then you do look at the profit. So that was legal error by the judge. Well, I guess the bottom line to your point is, is there any support in the record to support a 16-point enhancement? That's really what you're arguing, is it not? No. If I understand the question correctly, I don't think so. I thought I understood this case until you got up to make your argument. Well, if by supporting the record you mean factually. Yes. I'm not sure what you're arguing this morning. Oh, I'm very sorry. What I'm saying is the judge applied the wrong legal rule. Whether there is factual basis for an enhancement of 16 points, were that the right rule, is not the question. What rule do you want him to apply? The rule set forth in Application Note 2 to the guidelines, and that is that the net value, which is the measure that's used if it's higher than the amount of the bribe, is the profit on the contract won by the contractor. Okay. That's the rule. When the contract is for legitimate services, which are fully and properly performed. Is that the Lander's analysis? According to this court and Judge Rendell's opinion of this court in Pena, it comes out the same as but is not the same wording as the Lander's analysis. Okay. Pena is the case where the bribe was a bribe for the underlying illegitimate activity. That's right. So it's not. That's right. So Pena's dictum in that respect. That's right. Okay. But Pena looked at these cases. I don't know why you're so concerned about saying this is not a Lander's analysis that applies here. I'm not adamant about that. Only because this Court's only discussion of that point in another case, in which it was dictum, as you say, was to say that's not what the guideline calls for. It was that the Court was looking at a New Jersey case called Leon, but it was applying the Lander's analysis. All right. Let's hear from Mr. Moore. Glenn Moore Marco. Thank you, Your Honors. Glenn Moore Marco on behalf of the government here. I'd like to follow up on a couple of the points, a couple of the questions that were asked. First of all, we presented three bases, and I believe the district court actually ruled on two of them. It accepted both the salary argument the government was putting forward, and within a page or so, the salary argument was at supplemental appendix 150 to 151. It also disallowed the direct cost arguments. It did not reach a figure and say this was under the Lander's approach, this is the figure, but to the extent we were challenging individual costs as direct costs, it did reach a finding and disallowed those. So I think either of those is open and also our third argument. But let me start with what I think is the government's strongest argument, which is the salary argument. And I just fundamentally disagree with the guidelines analysis that Mr. Goldberger put forward on that. And let me, one second. Excuse me. Beginning with the guidelines, what we know is we're looking for the benefit of the contract. 2C1.1 provides for three alternative means of getting to that. It can be the value of the bribe, it can be the benefit received, it can be the loss to the government. Those are all distinct, and I think the problem that the government has with Mr. Goldberger's argument is he tries to conflate loss to the government with benefit received. If you look at the application note, it says that loss shall be determined in accord with Note 2 of 2B1.1. That's loss. That's different from benefit. Benefit received or to be received is separately defined in the application note. They give a few examples. One of the examples is a contract with a $20,000 profit. It's a fairly simple example, but it's not meant to be an all-encompassing example, as this Court's case law has shown. For example, the example can be more detailed. You could have a $150,000 contract in which there's $20,000 in profit, but also $50,000 going directly to the wrongdoer if it's a closely held corporation. That's this case. It's a more specific example, and it needs a special rule. Our position is that you don't deduct according to the ---- The district court decides the value of the services? It didn't actually need to, Your Honor. It did not. Because when you're trying to find out the government's loss, it's very important to actually know what the government got in return. But when you're trying to find out the benefit received by the payer of the bribe, it becomes irrelevant. Well, wait a minute. You assumed the result there when you said the payer of the bribe. The payer of the bribe. The question is who got the benefit? Well, in this case ---- Under the guidelines, right? Yeah. In this case, there really is no question that Ms. Leonidas and her husband owned this company. It was a closely held family company. And, in fact, let me point out that during the guilty pleas, Your Honor, there was a question that was asked of Ms. Leonidas. It was on page A90, I believe, of the appendix. And they asked her, was your salary commensurate with the profit of the company? And she answered yes. And that's in the record. Was commensurate with your what? Was your compensation commensurate with the profit of this company? And she said yes. Well, and what do you get from that? Well, from that, Your Honor, the question is if you're trying to determine profit, and she's the owner of this company, she really has the ability, as Judge Hardiman was suggesting, she can say that whatever is left over at the end of the day, she can pay it to herself in salary, or she can say it's profit to the corporation. It doesn't really matter. It's just an accounting device that she has complete control over, or at least she and her husband have complete control over. Right. But the evidence is undisputed, is it not, that she was giving value, some value. Absolutely. Absolutely. We did not say that this was a scam. And I ask you if the judge made any finding about the value of her service. And if he were to make a finding. She said that's not relevant. Yeah. I mean, if he were to make a finding, we would have no problem with a finding that she gave full value, because that's not what we think this case turns on. We think, again, the question is take a step back. If you're not trying to calculate loss to the government, which absolutely you have to know how much did the government get in return, but you're trying to say benefit received to the bribe payer, take a step back. What did Ms. Leonidas want to do when she was paying this bribe to the government employee? What did she want to get? I'll tell you what she didn't want to get. What she didn't care about was how much she paid to subcontractors and employees and all those costs that, of course, it is proper to subtract. She wanted to know how much money is going into my pocket at the end of the day. And at the end of the day, that was going to be the profit to the company  Those were all the benefits she was going to receive. And it's the example that Judge Fischer gave. If you pay a bribe in order to get a salary, how can you say there's no benefit? That's what you're doing. That's your objective. Go ahead, Judge. The thing that's troubling is you might be earning the benefit. You may have to work really hard to make that 80,000 or 100,000 a year quote salary that you pay yourself in a closely held corporation. Yeah. And I guess the government's position is it doesn't matter if you have to work 70 hours a week, you weren't entitled to that 80,000 dollar salary because, but for the illegal procurement of the contract, where would you make that kind of money? Yeah. I mean, absolutely, Your Honor. I mean, in the illegal gambling case in Pana, it didn't matter that obviously there are costs associated with running an illegal gambling business. There's time, there are expenses, not everything's profit, but that's not what the guidelines were key to. I mean, here the question is obviously these people knew they were going to have to perform work under the contract. That's sort of the risk that they took when they paid the bribe. That's what they wanted. But how can you attribute all of their salary, though, to the bribe? Because the record seemed to me undisputed that they had legitimate contracts that they were presumably earning. Well, these are the contracts that were, we distinguished the contracts that they were paying a bribe to an individual contracting officer who had control over them. Those were separated from the contracts that that individual didn't control. So you discounted the salaries? Oh, no. The salaries were for the contracts that were the subject of the indictment. They weren't for the other work that were done on the legitimate contracts. The salaries are tied to just the illegal FAA contracts that the government procurement officer helped them obtain. And they had other salary and profits presumably from the other contracts, but that's not what we're talking about. Their own salaries? I mean, I'm asking, I guess I'm confused. Are you attributing 100 percent of their salary? I thought you were. Yes. How can you do that? They're running, in my mind anyway, correct me if I'm wrong, they're running a business that's partially legitimate and partially illegitimate. Isn't it your burden to unpack which portion of their salaries, just Mr. and Mrs. Leonidas, which portion of their salaries are attributable to the illegal portion of their business and the legal portion of their business? My understanding of the record is that the million dollars in salary that was attributed by the government was agreed by the parties as the salary that was attributable to the illegal portion of their business. They have an additional salary for the others. But that that was, see, the way this contract works, Your Honor, and the record isn't as clear as it should be, but the way this contract works is they actually are paid a salary, they were paid employees sort of like the contractors. The government awarded a certain dollar figure for everybody's work. And Mr. Leonidas and Mrs. Leonidas were two of the people who even under the salaries at a certain rate that the government determined. Mr. Morimarco, that's further proof, I would think, or it could be argued that that was the value of their work. If, in fact, the government awarded that. We are not arguing value, Judge Fischer. If, in fact, you're not arguing value, how can you then say, at least under the net benefit analysis, that those salaries were not direct costs? We subtracted the million, Your Honor, for the direct value analysis. They got that million. For the net benefit analysis. Yeah. That doesn't get it down to the 3.4. That gets it below the 3.4 million that's in the record, does it not? No, Your Honor. Actually, we started with 6.7 million, and then we subtracted the salaries which included the million dollars to the Leonidases. That 2.4 figure that's in the record includes the $1 million that the Leonidases get. 2.4 does. Yes. That includes it. 2.4 does. Yes. All right. Now, does the record clearly enough under the net benefit analysis analyze the other indirect costs which were disallowed? Your Honor, I would argue yes under a categorical approach. If what the court did was it basically said that except for certain categories that it was willing to accept, like salaries, fringe benefits, employee benefits. Does the 2.4 include the rent? The 2.4 does not include the rent. They didn't get credit for the rent. Right. And the court made a finding that that was a direct cost. But this is related to Judge Hardiman's question earlier, which is who bears the burden. And I would point this Court to two cases, Landers at page 885 and Glick at page 525, that both say that it's the defendant's burden to establish which costs are direct costs. In both those cases, which are two of the principal cases that everyone is relying on here, it was the defendant's burden to establish that once the government came up with its general gross profit figure. Now, I know Landers is a Fifth Circuit case. What was the other case? Glick is a Second Circuit case, Your Honor, 142F3rd at 525. Actually a very good case for the government. Let me ask you one other question about this salary. Sure. On the second analysis, which basically said that the salary, since the salary was between over $1 million, therefore, you know, it was improperly obtained and that can be attributed as the benefit. Yes. Don't you really have to look at the corporation as opposed to the individuals in making that calculation? No, Your Honor. Since it's the corporation that received the contract? Your Honor, I think that's a distinction without a difference in this case. It is a difference here, though. Well, it would be if this Court were to allow that sort of, I don't want to use legalism in such a pejorative word, but I do think that obviously the guidelines are looking to the substance of what's going on rather than the form. I mean, these bribes, as far as the record reflects, didn't come out of the bank. They came out of, you know, Mrs. Leonidas and her husband's bank account. They were paid either in cash or however they were paid. And, again, this is, to some extent, a mom-and-pop operation. They have complete control. If Mr. Goldberger is right or if the rest of your question is right, they really have complete control to say that there's no profit in any contract. And, you know, certainly the government, you know, was very suspicious of the accounting here. And we didn't really try to fight it on, you know, have a full-scale, you know, war on the accounting. I think it would be in the government's interest to be arguing, I'm talking about over the large number of cases, that you're arguing against your client's interests. I mean, in a typical case, an employee of a corporation is for a payment of $50,000 to the employee is going to pay $50,000 to the public official to get a corporate contract. And the corporate contract is likely to be many profit, likely to be in most cases millions and millions. I absolutely agree, Judge Stapleton, and that was the other case, you know, that is being thrust back at us. But the point is it's the greater of the two. I mean, I don't have to say it's always the corporation or it's always the individual. And you certainly can have a special rule for when an individual and the corporation are essentially the same thing. You don't have to look to one or the other. You can look to both. I mean, that's not, you know, certainly an unusual concept. What do you do with Cohen and with the fact that they provided the judge with expert testimony on what the net profits of the corporation were? And apparently they say that went unchallenged. But let's talk about Cohen first. Yeah, I mean, the problem in Cohen was that the district court applied the kickbacks only, not the value of the contracts that the company worked for. And that's not, I mean, I don't have any problem with that holding, Your Honor. I mean, I think Cohen supports what we're trying to do here. It's the net value accruing to the entity on whose behalf the individuals paid the bribe. I mean, here I just think you have to take a broad value of what that means. It means they were giving these bribes to get more money into their pocket. Did they have to perform work for that? Absolutely. But they wanted to perform that work rather than have other people perform that work. And that to them was a benefit. They said, I'm going to make $100,000 or $80,000 or $60,000 a year, and I'm going to have to work for it, I know that, but I'm going to get it and you're not or they're not. And that's money that they were able to spend on their Mercedes or whatever it was that they chose to buy as property. So whether they characterized it as profit, whether they characterized it as salary, that's something they were getting. And you have to subtract the value they gave if you're calculating loss to the government. But this wasn't a loss to the government case. We never tried to prove that. We said, what are they getting? What's their benefit from the bribe? And if you can't take their salary. I understand your argument to use salaries. Okay. But if you're going to use benefit to the corporation, you didn't challenge the expert accountants. Can I clear up that one thing? Let me make clear one thing, what we agreed to and what we didn't. At the conclusion of defendant's brief, there's a two-page addendum, a chart that he says summarizes what their expert says. And that's absolutely true. It does. Those were not the numbers that were agreed upon by the parties. Those were the defense numbers before we reached agreement. The numbers that the parties agreed on are the numbers that are in the PSR. Those are the numbers that are in the sentencing memorandum that the government submitted and the defendant submitted before. The defendant's numbers to the court before sentencing are not those numbers that are at the, that came from the defense expert. They are different numbers. So there was a dispute about the numbers. You cannot accept what's in the expert report as a given because those were not the things after final agreement that we agreed upon. And if you want to, again, if you want to see what's agreed upon, it's in the. But if they were agreed upon figures, what's this argument about not carrying their burden of proof? I don't, I don't understand. I guess the, there was a disagreement before the court as to whether or not particular categories of things ought to be counted as direct or indirect. We argued. It's not the numbers. It's the, it's how you characterize them. Right? Yeah. Yeah. The distinction between indirect and direct is the fulcrum that decides who wins on that issue. Right. I think both sides. Right. Maybe Mr. Goldberg. What's that got to do with not carrying a burden of proof? I just don't understand it. I'm sympathetic to the question because I think that to some extent it might have been valuable for the district court to have heard some testimony on this. On the other hand, the government's position below was that for entire categories of expenses, they are just overhead. And so you didn't need to know the details. So owning a building is overhead. You know, paying landscaping and pest control is overhead. And things that are directly attributed to this contract are things like the people they hired to perform it. And that was how it was argued below. And it would have been to the defense advantage as well as the government's advantage, frankly, I think, to have some testimony on this. So to the extent that testimony is lacking, I think whose burden of proof it is, is crucial here. Thank you. Okay. Thank you. Okay. Thank you, Mr. Goldberg. Mr. Goldberg? Mr. Goldberg, can I ask you to start with where opposing counsel left off? That's what I was going to do. Do you agree that the burden of proof is critical? Because your expert didn't come forward with those many costs and say, well, our landscaping budget was increased by 40 percent because we took on all this new work that we got through these illicit contracts. That sort of analysis wasn't done. And if it's not your burden, it doesn't matter. Because they didn't do it either. If it's their burden, they lose on that. But if it's your burden, don't you lose on that? I think you're imagining the way the company operated incorrectly, if I may say so. Because the expert did, in fact. The expert report was about the costs of executing this contract, the SMA contract. It was not about the company as a whole. And with respect to the building is the best illustration of that. They did not have this building before they got this contract. They had to acquire this building for the performance of this contract. The contract stated the kind of building they had to have and the location it had to be. The sole purpose of this building and its landscaping and its pest control and everything else you need to have the building was this contract. It was absolutely a direct cost of the performance of this big contract. Mr. Leonidas was the landlord on it. A company that he owned was. He got paid the rent, right? Absolutely. And the rent was. There are all kinds of other expenses. I mean, the list is lengthy. Alarm, cleaning, trash removal, landscaping. Yes, standard expenses. Meals and entertainment, utilities, professional education, dues and subscriptions. As far as I can tell, the record does not illuminate at all which portion of those many costs that this company incurred were attributable to its illegal, if I may say that, portion of its business and its legitimate portion of its business. May I dispute the use of that terminology? Because this company is 100 percent legitimate. And all of its business is legal. It won some of that legitimate and legal business by the payment of a bribe. And all of this Court's cases and the guideline commentary require us to make that distinction. You can't look at it as an illegitimate business and get the right answer. When you have a legitimate business which secures a legitimate contract, which it fully performs by the payment of a bribe, we treat the business not as an illegitimate but as a legitimate business and we don't disallow normal business costs including salaries paid for services performed and rent paid for the- You wouldn't concede that some of its contracts are illegitimate? No. Not in the way that term is used in this body of case law. Of course it's illegitimate to pay a bribe. But the contract in the relevant sense in which we make the distinction in the Pena case between the gambling business and in Cohen the food business, the legitimate food business that won a contract by bribery- So a fellow who's an astrophysicist who has a Ph.D. from MIT procures a defense contract through bribery. It's a $10 million contract. He has five employees. He says, hey, the fair market value of my labor on this contract is $3 million a year. I'm going to pay myself a salary of $3 million a year. And the company's a break-even company. When he gets caught up on bribery, the benefit received is zero because the company has made no profit? If the government does not contest, if he presents evidence, not just because he says it, but if he presents evidence that in the market for the services he provides- Let's assume he's worth $3 million a year. He's, quote, unquote, worth $3 million. The government was going to pay $3 million to somebody for the performance of those services. Then the net value of that contract to the company that won it through bribery is zero. And the value of the bribe is the measure of the benefit. And if he pays himself a salary of $100,000 and at the end of the year says, we had a good year, I'm going to give my-we had $2.9 million in profit, and he writes himself a check for $2.9 million, that defendant gets hit for $2.9 million in benefit, whereas the other defendant gets hit with zero in benefit. That's what the rule says. And if it comes out wrong in justice and fairness, we don't tie ourselves with handcuffs to the guidelines. The judge can look at a case and say, you know, the rule produces an unjust result and an unfair result in this case. It doesn't take account of the seriousness of the offense or something like that. But you can't change the rule on a case-by-case basis, as the government is trying to do, saying, whichever comes out better for us is the right rule. That has to be the wrong answer. Mr. Goldberger, in this case- Yes. We're looking at whether or not the court appropriately applied a 16-point enhancement. Correct. Okay? If we look at the numbers and if we accept what you've said and deduct the salaries as a direct cost and the rent as a direct cost- isn't the net benefit still in excess of $1 million, based on the figures that are in the record? If you subtract those two? I don't have all the numbers in my head, but I think the answer to that question is no. No. If you subtract all- How much is the rent? How much was the rent? Isn't it- The undefined. Yeah. Okay. And deducting the salary, you were down to $2.4 million. If you deduct the rent, you're at $2 million. And anything between $1 million and $2.5 million supports a 16-point enhancement. But there's a long list of other expenses of operating this contract, which total nearly- You don't want to answer my question for some reason. I'm trying to. I asked you a specific question about salary and rent. And I said salary and rent. Aren't you still between $1 million and $2.5 million? And the answer to that question is yes. Yes. Okay. Now, did the court fully enough evaluate whether or not the balance of those costs should have been legitimate direct cost of this contract, in your opinion? No. Okay. The judge stopped the analysis. I think we're in agreement. My friend, Mr. Marco, and I are in agreement that the judge stopped that analysis. Sure, because in the end, it's not the analysis that the judge used to reach the decision. Other work was going on in this facility. Do you agree with that? I don't think so. Does the record show that? I don't think so. The defendant and her husband were working on other contracts, were they not? Not in this facility, I don't believe. I think this facility was limited to – maybe incidentally, but in no significant measure. This was by far the largest contract they had. This was the second facility. Yes. It was created because they secured this nice contract. Which was the biggest contract they've ever had, and they were hoping that it would be the beginning of a new level of career for them. Yes. All right. Thank you. Okay. Thank you very much. Thank you, Mr. Goldberger. We thank counsel for their arguments, and we'll take the matter under advisement.